IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY LUCERO,

    Plaintiff,

vs.                                                       No. CIV 97-707 MV/RLP

SOUTHWEST COCA-COLA BOTTLING
COMPANY,

    Defendant.

# **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, and to Amend or Alter the Judgment of the Trial Court, filed January 14, 1999 **[Doc. No. 92]**, and Plaintiff's Motion for an Award of Attorney's Fees, filed January 29, 1999 **[Doc. No. 95]**. The Court, having reviewed the pleadings, relevant law, and being otherwise fully informed, finds that Defendant's motion is not well taken and will be **denied in part**, and that Plaintiff's motion is well taken and will be **granted**.

### **Background**

On May 22, 1997 Mr. Anthony Lucero, a former sales center manager for Southwest Coca-Cola in Clovis, New Mexico, filed a complaint in this Court after exhausting his administrative remedies. In that three count complaint, Mr. Lucero alleged that Southwest Coca-Cola wrongfully terminated him on October 24, 1994 because of his race, that Southwest Coca-Cola breached an implied contract of employment, and that Southwest Coca-Cola had intentionally inflicted emotional

distress. The motion practice of the parties was sparse. Southwest Coca-Cola filed a motion to dismiss the emotional distress count. The Court denied the motion, and the case proceeded to trial on December 16, 1998. Near the end of the trial, Mr. Lucero dismissed his intentional infliction of emotional distress claim. The Court submitted the case to the jury on the Title VII and breach of implied employment contract causes of action.

Southwest Coca-Cola defended on several grounds. First, Southwest Coca-Cola asserted that it had terminated Mr. Lucero because the latter sold out-of-date product, or soft drinks that had reached the expiration date Southwest Coca-Cola had stamped on their containers. Southwest Coca-Cola alleged that freshness dating was an important concern of its franchisor. Second, Southwest Coca-Cola denied that it had acted out of discriminatory animus. Finally, Southwest Coca-Cola asserted that its employee manual did not give rise to an implied employment contract, but that if it did Southwest Coca-Cola had properly followed all the termination procedures the manual specified.

The jury returned a plaintiff's verdict in the amount of $1,699,939.00 on December 22. In this special verdict, the jury found both that race and/or color was a motivating factor in Southwest Coca-Cola's decision to terminate Mr. Lucero's employment, and that absent this motive Southwest Coca-Cola would not have discharged Mr. Lucero. The jury also found that Southwest Coca-Cola Lucero. In assessing damages, the jury awarded $98,976 for lost wages, $200,963 for future wages, and $400,000 for emotional damages. Finally, the jury found that Southwest Coca-Cola's conduct warranted an award of punitive damages, setting those damages at $1,000,000. The Court entered judgment on the verdict on December 30, 1998. Southwest Coca-Cola contests the verdict; as a prevailing party Mr. Lucero seeks his attorney's fees.

In its Rules 50 and 59 motion, Southwest Coca-Cola essentially disputes the sufficiency of

the evidence on which the jury based its verdict. First focusing on the Title VII claim, Southwest Coca-Cola argues that Mr. Lucero's evidence of discrimination only amounts to ambiguous remarks and stray comments that are not actionable. Southwest Coca-Cola also maintains that Mr. Lucero has not shown the nexus between those remarks and his termination that is necessary to support the jury's verdict. In addition, Southwest Coca-Cola avers that the employees with whom Mr. Lucero has compared himself and who received more favorable treatment when violating company policies were not so similarly situated as to provide a legally valid comparison. Lastly, Southwest Coca-Cola claims that, pursuant to the statutory damages limitations of Title VII, the Court must reduce the jury's compensatory and punitive damages award to $300,000.

For the contract claim, Southwest Coca-Cola continues to argue, as it did at trial, that the exclusionary clauses in its employee manual negate any inference that an implied contract existed between it and Mr. Lucero.

Southwest Coca-Cola also asserts, for both the Title VII and contract claims, that Mr. Lucero has not presented sufficient evidence to support the jury's finding of punitive damages.

In his motion for attorney's fees, Mr. Lucero urges the Court to find him the prevailing party, approve the hours expended in this litigation, and award him compensation at the rate of $200 per hour. Mr. Lucero's counsel asserts sufficient experience to warrant this rate. Mr. Lucero has duly submitted affidavits from his counsel and other practitioners in the civil rights field to substantiate his attorney's fees claim.

**Discussion**

I.  Defendant's motion for judgment as a matter of law, or in the alternative, for a new trial.

Under Fed. R. Civ. P. Rule 50 and its construing case law, when reviewing a motion for judgment as a matter of law, a court may grant the motion "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Mason v. Oklahoma Turnpike Authority*, 115 F.3d 1442, 1450 (10th Cir. 1997). The Court can not weigh the evidence, pass on the credibility of witnesses, or substitute its conclusions for that of the jury. *Id.*; *Wolfgang v. Mid-America Motorsports, Inc.*, 111 F.3d 1515, 1522 (10th Cir. 1997). While construing the evidence and inferences therefrom most favorably to the nonmoving party, *Wolfgang*, 111 F.3d at 1522, the Court must grant the motion if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. *Mason*, 115 F.3d at 1450, *quoting Harolds Stores, Inc. v. Dillards Dep't Stores, Inc.*, 82 F.3d 1533, 1546-47 (10th Cir. 1996).

Where a new trial motion under Rule 59 "asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999) (quotations and citations omitted), *petition for cert. filed* (May 17, 1999) (No. 98-1854). A court must "consider the record evidence in the light most favorable to the nonmoving party." *Id.*

    A.  The Title VII Claim
        i.  Sufficiency of the evidence

In a Title VII case alleging disparate treatment, "the crucial inquiry is whether the defendant intentionally discriminated against a plaintiff." *Anaeme*, 164 F.3d at 1278, *quoting Texas Dep't of*

*Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). A plaintiff may prove his case through either direct or circumstantial evidence. *Anaeme*, 164 F.3d at 1278. In this case, although Mr. Lucero presented some direct evidence of discriminatory animus, in the form of discriminatory remarks by his supervisors, his discrimination case also focused on indirect evidence. Thus, the shifting burden approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is appropriate. *Anaeme*, 164 F.3d at 1278. Under this shifting burden standard,

> a plaintiff must carry the initial burden of establishing a prima facie case of discrimination. Once a prima facie case of discrimination is made out, the burden of production shifts to the defendant to articulate some legitimate nondiscriminatory reason for its action. If the Defendant does so, the plaintiff must be given the opportunity to show by a preponderance of the evidence that the reason offered by the defendant is mere pretext.

*Ramsey v. City and County of Denver*, 907 F.2d 1004 at 1007 (10th Cir. 1990).

To meet his burden of establishing a prima facie case of discrimination, Mr. Lucero needed to show that he belonged to a protected class, that he was discharged for violating a work rule, and that similarly situated employees were treated differently. *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir. 1992). The only dispute in this case was whether Mr. Lucero could properly compare himself to other employees who violated work rules but were not terminated. "When comparing the relative treatment of similarly situated minority and non-minority employees, the comparison need not be based on identical violations of identical work rules; the violations need only be of 'comparable seriousness.'" *Elmore v. Capstan, Inc.*, 58 F.3d 525, 530 (10th Cir. 1995). As the Tenth Circuit has further explained,

> Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline... A court should also compare

5

> the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated.

*Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997).

The testimony at trial showed sufficient similarity between other employees and Mr. Lucero to satisfy this definition. Southwest Coca-Cola human resources vice president Mr. Rex Castle testified that on one occasion a service technician who traveled from Texas to Trinidad, Colorado, could not report to work because he was intoxicated to a point well above the legal limit. Mr. Castle explained that this non-minority managerial employee was placed on a substance abuse program but was not otherwise disciplined or demoted. Mr. Castle also testified that another non-minority managerial employee, based in Amarillo, used company equipment and company employees to repair a fountain unit which he subsequently installed at his house. Mr. Billy Knight, a non-minority sales center manager in Clovis, testified that Southwest Coca-Cola removed him from that position in large part because he did not control the sale of out-of-date product. At the time Mr. Knight did not receive a reduction in pay. Southwest Coca-Cola declined to cross examine Mr. Knight. Finally, Mr. Castle stated that a non-minority assistant sales center manager was not terminated despite his misappropriating a customer's property. All these employees were supervised by the same management team that made the decision to terminate Mr. Lucero.[1] Southwest Coca-Cola's reason

---

[1] At trial Southwest Coca-Cola tried to place the termination decision squarely on the shoulders of human resources manager Mr. Rex Castle. Testimony, however, showed that the decision was not his alone, and flowed from the consensus of several managerial employees. For example, Mr. Lucero testified that Mr. Long, when he came to his office with Mr. Castle and corporate comptroller Steve Arrington, stated: "we've made the decision to terminate you." Mr. Castle's EEOC affidavit mentions Ronnie Hill, chief financial officer Gary Phy, Mr. Arrington, and Mr. Long as being involved in the termination decision. Mr. Arrington also acknowledged participating in the termination decision, testifying that he discussed Mr. Lucero's case with Mr. Castle and Mr. Long.

for terminating Mr. Lucero was that he sold, in an effort to satisfy a debt to his center's employee coffee supplier, 80 cases of out-dated product. This offense is not more severe than the infractions described here. Under those facts, Mr. Lucero sufficiently met his prima facie burden by showing that these other employees committed offenses of at least comparable seriousness yet received little, if any, discipline.

Southwest Coca-Cola next argues that its termination of Mr. Lucero for selling out-of-date product was legitimate and nondiscriminatory. Under controlling case law, Southwest Coca-Cola's burden of articulating a proper reason for adverse action is light. *See Anaeme*, 164 F.3d at 1279. The Court agrees that it has met that burden. Indeed, Mr. Lucero has never denied selling out-of-date product to the Clovis center employees. The remaining issue, then, is whether Mr. Lucero has presented sufficient evidence to carry his ultimate burden of persuasion, *id.* at 1282; *Flasher*, 986 F.2d at 1316.

From the evidence Mr. Lucero put forth at trial, the jury could reasonably conclude that Southwest Coca-Cola's reason for its actions were pretextual. Southwest Coca-Cola employee Mr. George Newton testified that comptroller Steve Arrington used the term "Mexican." Mr. Ruben Cordona heard Mr. James Long, Mr. Lucero's immediate supervisor, use the terms "Latino brothers" and "Mexicans" when referring to Hispanic employees. Mr. Arrington testified that he heard Mr. Long use the term "Mexicans." Mr. Lucero testified that Mr. Long referred to Hispanic employees as "Latino brothers" or as "bros." Mr. Lucero also testified that during a lunch meeting with Mr. Long and Mr. Arrington, Mr. Long referred to attendees of a concert the company was sponsoring as "a bunch of drunk Mexicans." The jury heard sufficient evidence of discriminatory animus, then, to satisfy the requirements of Rules 50 and 59, and "was fully entitled not to find [Southwest Coca-

Cola's] evidence credible." *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 551 (10th Cir. 1999), *petition for cert. filed* (May 12, 1999) (No. 98-1829).

In addition, Mr. Lucero presented testimony from which the jury reasonably could conclude that Southwest Coca-Cola, instead of following the progressive discipline policy it outlined in its employee manual, prepared an ad hoc investigation to justify its pre-investigation decision to terminate Mr. Lucero. Trial Exhibits 8, 12, and 13 all are memoranda from various employees dated October 21, 1994, the last work day before termination. These documents purport to detail disciplinary encounters their authors had had with Mr. Lucero in the past. In contrast, exhibit 39 is a January 4, 1994 disciplinary report addressing misappropriation by an employee that occurred on December 16, 1993. Far from being an after-the-fact gleaning of disciplinary incidents not mentioned in an employee file, exhibit 39 is a good example of Southwest Coca-Cola's progressive discipline policy at work. Exhibit 39 stands in sharp contrast to Exhibits 8, 12, and 13. This evidence more than creates reasonable inferences, along with the discriminatory remarks presented to the jury, that Southwest Coca-Cola intentionally discriminated against Mr. Lucero.

The Court disagrees with Southwest Coca-Cola's argument that the derogatory comments in this case, as a matter of law, are stray remarks that have no nexus with the decision to terminate. The testimony at trial reflected that both Mr. Long and Mr. Arrington, authors of those remarks, were involved in the investigation of Mr. Lucero and participated in the termination decision. Mr. Arrington testified that he, Rex Castle, and Mr. Long participated in the decision to terminate Mr. Lucero. Mr. Lucero testified that Mr. Castle, Mr. Arrington, and Mr. Long all were present at the Monday morning meeting in Clovis where they informed him of their decision. Mr. Castle testified that Mr. Arrington and Mr. Long together launched an investigation of Mr. Lucero, and that as

human resources manager Mr. Castle became involved only in the late stages of that investigation. Their discriminatory comments in this case, therefore, are not mere stray remarks.

Southwest Coca-Cola construes *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526 (10th Cir. 1996), as not only requiring a nexus between racist remarks and adverse action, but as holding that statements unrelated to the employment decision at issue can not establish a violation of Title VII. In essence, Southwest Coca-Cola insists that discriminatory remarks must be directly linked to the termination decision to support a jury's discrimination verdict.

*Cone* does state, in construing remarks by two managerial employees, that "isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." *Cone*, 14 F.3d at 531. The court went on to note, however, that one author of some comments did not participate in the termination decision in that case, and that the other author's comments "had not been shown to have had any connection with a discriminatory motive in terminating the plaintiff." *Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1479 (10th Cir. 1996), *citing Cone*, 14 F.3d at 531. Thus, *Cone* does not provide clear support for Southwest Coca-Cola's position.

Unlike the evidence in *Cone*, the evidence in the case at bar shows a connection between discriminatory comments and the decision to terminate Mr. Lucero. Comments by Mr. Arrington and Mr. Long, both participatory decision makers in Mr. Lucero's termination, specifically identified Hispanics. Moreover, "[c]ases involving adverse action against a person of a protected class are always difficult." *Green v. Yates*, 1999 WL 76845 at *2 (10th Cir. 1999) (unpublished). A plaintiff may prove a nexus, like other evidence in a lawsuit, through either direct or circumstantial evidence. *Id.*, *citing United States Postal Serv. Bd. of Governors v. Aiken*, 460 U.S. 711, 714 n.4 (1983).

9

Although there is an absence of a discriminatory statement directly linked to Mr. Lucero's termination in this case, the Court concludes that, based on a review of all relevant facts, *Green*, 1999 WL 76835 at *2, Mr. Lucero has shown sufficient discriminatory animus through the remarks of Mr. Long and Mr. Arrington to satisfy his ultimate burden of proving discrimination. To read *Cone* as narrowly as Southwest Coca-Cola suggests would be to significantly impede a plaintiff's methods, under established jurisprudence, of indirectly showing discrimination. *See McDonnell Douglas* 411 U.S. at 800-805. "Title VII tolerates no discrimination, subtle or otherwise." *Id.* at 801.

ii. Statutory limitation on damages

In its special verdict the jury awarded damages collectively for both surviving causes of action. Included in the damages award were categories for lost wages and benefits, future wages and benefits, emotional pain and suffering, and punitive damages. Southwest Coca-Cola quite correctly asserts that under its circumstances Title VII generally limits the cumulative damage recovery for breach of the statute to $300,000. *See* 42 U.S.C. § 1981a(b)(3)(D).[2]

Despite this general limitation, the statute is of little help to Southwest Coca-Cola in this case. Back pay is not included in this limitation, *id.* § 1981a(b)(2), and where damages can be attributed to more than one cause of action, as here, a plaintiff controls the allocation of those damages. *See Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1345 (1st Cir. 1988). In the implied contract cause of action, only emotional distress damages are not available, unless the parties contemplated

---

[2] Southwest Coca-Cola devotes considerable energy to arguing that the Court should, pursuant to the statute, limit Mr. Lucero's front pay award. In the Tenth Circuit, however, *Medlock* recently has made explicit what was a logical extension of *Wulf v. City of Wichita*, 883 F.2d 842, 873 (10th Cir. 1989): front pay awards are equitable, and thus not subject to the Title VII statutory damages limitation. *See Medlock*, 164 F.3d at 556.

such damages at the time the contract was made. *See Bourgeous v. Horizon Healthcare Corp.*, 872 P.2d 852, 858 (N.M. 1994). Thus, those damages are clearly attributable only to the Title VII cause of action. Mr. Lucero concedes that the Court should reduce the jury's $400,000 emotional damages award to $300,000, the appropriate damages cap under § 1981a(b)(3)(D).

B.  The implied contract claim

For this cause of action, Southwest Coca-Cola argues that the evidence did not justify the jury's conclusion that the relationship between it and Mr. Lucero created an implied contract of employment. The Court disagrees.

Southwest Coca-Cola's employee manual, admitted into evidence as stipulated exhibit 3, clearly sets out the progressive discipline a reasonable employee could expect for poor performance, "beginning with coaching and progressing through one or more written warnings and finally termination." Trial Exhibit 3 at 17. Moreover discipline for misconduct, absent severe circumstances, would also be progressive. *Id.* The manual also explains that, whether discipline is oral or written, "[r]ecords of all disciplinary action will be maintained in [an employee's] personnel file."[3] Far from being a mere declaration of Southwest Coca-Cola's approach, non-promissory in nature, *see Sanchez v. New Mexican*, 738 P.2d 1321, 1324 (N.M. 1987), the language of this employee manual is sufficiently specific to give rise to the reasonable expectation that Southwest Coca-Cola would adhere to its representations.

Southwest Coca-Cola, however, points to disclaimers in the employee manual and maintains that they negated any promises arising from its progressive discipline language. The manual, despite

---

[3] It is undisputed that Mr. Lucero's employee file contained no evidence of progressive discipline.

its promissory language, also expressly disclaims the existence of an employment contract. Trial Exhibit 3 at 2, 18.

A disclaimer alone is insufficient, under New Mexico law, to "negate a document's contractual status and must be read by reference to the parties' norms of conduct and expectations founded upon them." *McGinnis v. Honeywell, Inc.*, 791 P.2d 452, 456-57 (N.M. 1990), *quoting Zaccardi v. Zale Corp.*, 856 F.2d 1473, 1476-77 (10th Cir. 1988). Therefore, the Court can not solely give effect to the disclaimers. Rather, the Court must look to testimony addressing the parties' conduct and expectations to determine if it supports the jury's conclusion that Southwest Coca-Cola was limited in its ability to terminate Mr. Lucero at will. *See McGinnis*, 791 P.2d at 457.

The testimony concerning Southwest Coca-Cola's termination practices unquestionably could permit the jury to conclude that the disclaimer language in the employee manual was ineffective in negating that document's contractual status. Mr. Castle testified that Southwest Coca-Cola applied progressive discipline both because of fairness and because the employee handbook required it. Mr. Arrington stated that in some circumstances, employees should receive progressive discipline. Mr. Long testified that, as a managerial employee, he was entitled to progressive discipline. Mr. Terry Smith, service manager for Southwest Coca-Cola, testified that were problems to arise with his conduct, he would be entitled to progressive discipline. Clovis sales manager Mr. Jimmy Gardner, who replaced Mr. Lucero in that position, testified that he expected to receive progressive discipline as an employee. Mr. Cordona, Roswell sales center manager, testified that he was entitled to progressive discipline for either misconduct or poor performance. Finally, corporate comptroller Arrington also testified that employees could not be terminated or disciplined without cause, and that depending on the circumstances, he would be entitled to progressive discipline for either performance

12

or conduct deficiencies. All this testimony is more than sufficient to support, despite disclaimers, the jury's conclusions with respect to Mr. Lucero's reasonable expectations that the representations in the employee manual limited Southwest Coca-Cola's ability to terminate him. Moreover, although one issue at trial was whether the actions of Mr. Lucero were so severe as to warrant immediate termination, the jury was fully able to conclude, from the evidence presented, that Mr. Lucero's actions were of a degree requiring Southwest Coca-Cola to comply with its progressive discipline policy.

      C.      Sufficiency of the evidence to support an award of punitive damages

Southwest Coca-Cola next argues that, under either the Title VII or implied contract cause of action, Mr. Lucero presented insufficient evidence to warrant a punitive damages award. Title VII allows the imposition of punitive damages where an employer acts "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1); *Medlock*, 164 F.3d at 551. Punitive damages for breach of an implied employment contract in New Mexico are available where a plaintiff demonstrates a "showing of bad faith by an employer during the course of a plaintiff's employment or in the manner used to terminated him." *Newberry v. Allied Stores, Inc.*, 773 P.2d 1231, 1239 (N.M. 1989). Perhaps articulating a different standard, the New Mexico Supreme Court later held that in contract actions, a punitive damages award must be predicated on "at least a showing that the breaching party acted with reckless disregard for the interests of the nonbreaching party." *Paiz v. State Farm Fire and Cas. Ins. Co.*, 880 P.2d 300, 307 (N.M. 1994). The *Paiz* court defines reckless disregard as "when the defendant *knows* of potential harm to the interests of the plaintiff but nevertheless utterly fails to exercise care to avoid the harm."

13

*Id.*, 880 P.2d at 308 (emphasis in original) (quotations omitted).

Applying these standards, the Court concludes that Mr. Lucero presented enough evidence of intent to support the punitive damages verdict for both the Title VII and contract claims. With respect to the Title VII claim, the evidence at trial showed a discriminatory animus toward Hispanics on the part of decision-making employees of Southwest Coca-Cola. Moreover, at least one decision maker, Mr. Long, expressly associated Mr. Lucero with that protected group. The hasty termination of Mr. Lucero and the lack of process afforded him also supports the jury's conclusion that Southwest Coca-Cola acted in reckless disregard of his federally protected rights.

With respect to the contract claim, the evidence pointed to Southwest Coca-Cola's deciding to terminate Mr. Lucero without providing him the progressive discipline outlined in its employee manual, then seeking documentation to support that decision from several employees. From this evidence the jury could conclude that Southwest Coca-Cola was determined to terminate Mr. Lucero for selling out-of-date product, regardless of his entitlement to progressive discipline. In sum, the evidence in this case was sufficient for an award of punitive damages under either the Title VII or contract theories Mr. Lucero presented to the jury.

II.     Plaintiff's motion for attorney's fees

In this motion Mr. Lucero seeks his attorney's fees pursuant to 42 U.S.C. § 2000e-5(h), and has complied with his obligation to provide supporting documentation for those fees. Southwest Coca-Cola does not dispute the time that Mr. Lucero's counsel spent on this case. Rather, Southwest Coca-Cola argues that the Court should decline to award the $200.00 per hour that Mr. Lucero suggests as a reasonable rate, and instead compensate Mr. Lucero's attorney at his customary rate

of $125.00 per hour. To support its argument, Southwest Coca-Cola points out that the rate of $200.00 per hour is usually awarded in this district only to attorneys who have more civil rights experience and who have been in practice substantially longer than Mr. Lucero's counsel.

In determining a reasonable rate, a court must consider "a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the court sits calculated as of the time the court awards fees." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). Thus, although Mr. Lucero's counsel is from the small community of Tucumcari, the rates appropriate for Santa Fe and Albuquerque, where this Court usually sits, control. Fees of $200.00 per hour are not uncommon for these localities in civil rights cases. *See, e.g., Mitchell v. Moya*, No. CIV 95-0138 MV (D. N.M. Jan. 29, 1998).

Mr. Lucero's counsel is entitled to this rate. While the Court recognizes that Mr. Lucero's counsel has not been practicing law as long as some members of the New Mexico civil rights bar, Mr. Lucero's counsel is not an inexperienced attorney. He has been in practice since 1987, and since 1991 has devoted a substantial part of that practice to civil rights cases. The jury verdict here, where a settlement offer was one month's wages, *see* Affidavit of Warren F. Frost, reflects that Mr. Lucero's counsel has handled this case with the skill and expertise comparable to that possessed by other attorneys in the civil rights field. Consequently, the Court finds it appropriate to award Mr. Lucero's counsel the prevailing rate for lead counsel in civil rights cases.

**THEREFORE**,

**IT IS HEREBY ORDERED** that Defendant's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, and to Amend or Alter the Judgment of the Trial Court, filed

January 14, 1999 **[Doc. No. 92]** be, and hereby is, **denied in part**.

IT IS FURTHER ORDERED that Plaintiff's Motion for an Award of Attorney's Fees, filed January 29, 1999 **[Doc. No. 95]** be, and hereby is, **granted**, together with interest at 4.513%, awarded from December 22, 1998 until paid.

IT IS FURTHER ORDERED that the Judgment in this case be, and hereby is, **reduced by $100,000.00**.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

June 1, 1999

Counsel for Plaintiff          Counsel for Defendant

Warren Frost                   Deborah Wells
                               Harold Pinkley